CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED

March 30, 2026

LAURA A. AUSTIN, CLERK
BY: /s/ T. Costa
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | |
|---|---|
| JEFFREY A.,[1] | Civil Action No. 7:25-CV-00511 |
| Plaintiff, | |
| v. | **REPORT & RECOMMENDATION** |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | By: C. Kailani Memmer
United States Magistrate Judge |

Plaintiff Jeffrey A. (Jeffrey), by counsel, challenges the final decision of the Commissioner of Social Security (Commissioner) finding him not disabled and therefore ineligible for disability insurance benefits (DIB). This case is before me by referral pursuant to 28 U.S.C. § 636(b)(1)(B).[2] Neither party has requested oral argument, and oral argument will not aid in the decisional process. Thus, this case is ripe for decision.

Having considered the administrative record, the parties' filings, and the applicable law, I respectfully recommend to the presiding District Judge that the decision of the Commissioner be reversed and remanded pursuant to the fourth sentence of 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

In reviewing the merits of the Commissioner's final decision, judicial review is limited to assessing whether the administrative law judge (ALJ) applied the correct legal standards and whether substantial evidence supports the ALJ's factual findings. *Arakas*

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in Social Security opinions.

[2] On October 10, 2023, the presiding District Judge referred Social Security cases in the Roanoke Division to me. (Standing Order No.  2023-18.)

*v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 94 (4th Cir. 2020). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citation modified); *see also Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589).

Further, remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" where the court is "left to guess [at] how the ALJ arrived at his conclusions"). ALJs must not only reach a conclusion supported by substantial evidence but must also "build an accurate and logical bridge from the evidence to their conclusions." *Arakas*, 983 F.3d at 95.

## CLAIM HISTORY

Jeffrey was born in 1969 and completed one year of college.[3] R. 190, 288. On August 4, 2022,[4] Jeffrey applied for DIB with an alleged disability onset date of June 25,

---

[3] Pursuant to the DIB regulations, "[i]f you are closely approaching advanced age (age 50–54), we will consider that your age along with a severe impairment(s) and limited work experience may seriously affect your ability to adjust to other work." 20 C.F.R. §§ 404.1563(b)-(e); *see also* 20 C.F.R. § 416.963(b)-(e). "In making the determination of whether a person can make an adjustment to other work, advancing age is an increasingly limiting factor in the claimant's ability to adjust to other work." *Tracey H. v. Kijakazi*, No. 4:20-CV-40, 2022 WL 731535, at *4 (W.D. Va. Mar. 10, 2022) (citing 20 C.R.F. § 404.1563(a)). Here, Jeffrey was 54 years old at the time of the ALJ's decision. R. 41. Moreover, the ALJ noted Jeffrey was in the "closely approaching advanced age" category. R. 39. However, none of the parties raised age as an issue, so the court declines to *sua sponte* raise this issue.

[4] In the ALJ's decision, the ALJ made a mistake by noting Jeffrey filed for DIB on August 3, 2022, instead of the correct date of August 4, 2022. R. 24, 188.

2021. R. 188, 190. His claim was initially denied on May 4, 2023, and again upon reconsideration on December 1, 2023. R. 104, 110. On December 7, 2023, Jeffrey requested an ALJ hearing. R. 113. On July 18, 2024, the ALJ held an online video hearing, and at the hearing Jeffrey was represented by counsel. R. 48-49. Mr. James Primm testified as an impartial vocational expert. R. 71-77. On August 20, 2024, the ALJ issued an "Unfavorable Decision" analyzing Jeffrey's claim under the familiar five-step process,[5] finding him not under a disability from June 25, 2021, through the date of decision, and denying his claim for benefits. R. 41.

At the first step, the ALJ found Jeffrey had not engaged in substantial gainful activity since June 25, 2021, the alleged disability onset date. R. 26. At the second step, the ALJ found Jeffrey had the following severe impairments: (1) adrenal insufficiency, obesity, (2) diabetes mellitus with neuropathy, (3) hyperthyroidism, (4) depressive disorder, (5) anxiety disorder, (6) liver disease, and (7) lumbar spine spondylosis. *Id*. At the third step, the ALJ found Jeffrey's impairments, either individually or in combination, did not meet or equal a listed impairment. R. 27.

The ALJ found Jeffrey had the residual functional capacity (RFC) to perform light work[6] with the following limitations:

---

[5] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to the claimant's past relevant work; and if not, (5) whether the claimant can perform other work. *Johnson v. Barnhart*, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); *Heckler v. Campbell,* 461 U.S. 458, 460-62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. *Oakes v. Kijakazi*, 70 F.4th 207, 211 (4th Cir. 2023) (citing *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017)). At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); *Taylor v. Weinberger*, 512 F.2d 664, 666 (4th Cir. 1975).

[6] Light work is defined as follows:

> [H]e is incapable of climbing ladders, ropes, and scaffolds and is incapable of kneeling or crawling; he is capable of occasionally climbing ramps and stairs and occasionally balancing, stooping, and crouching; he is capable of occasionally pushing and/or pulling with the bilateral lower extremities; he is capable of occasionally operating foot controls with the bilateral feet; he is capable of no more than occasional exposure to extreme temperatures, vibrations, and slippery or uneven surfaces; he is able to perform work that does not require driving as a part of work duties or require any work-related exposure to hazards, such as unprotected heights and unguarded moving machinery; he is able to apply commonsense understanding to remember and carry out simple, detailed, and complex instructions and tasks furnished in written, oral, or diagrammatic form and work at a consistent pace throughout the workday at such tasks but not at a production rate pace where each task must be completed within a strict time deadline, such as work on a conveyor belt or assembly line, or within high quota demands, such as work with an hourly quota requirement; he is able to sustain concentration and persist at workplace tasks, as described, up to 2 hours at a time with normal breaks during an 8-hour workday; he is able to deal with problems involving several concrete variables in or from standardized situations; and he is capable of frequent but not constant interaction with the general public, co-workers, and supervisors.

R. 33-34. At the fourth step, the ALJ found Jeffrey was unable to perform any past relevant work. R. 39. At the fifth step, based on the testimony of Mr. Primm, the ALJ identified the following jobs, which exist in significant numbers in the national economy, that Jeffrey can perform: (1) office helper, (2) information clerk, and (3) mail clerk. R. 41.

---

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

4

Thus, the ALJ determined Jeffrey was not disabled from June 25, 2021, the alleged disability onset date, through August 20, 2024, the date of decision. *Id.*

Jeffrey's appeal to the Appeals Council was denied on May 29, 2025. R. 8. This appeal followed.

Because this court writes primarily for the parties who are familiar with the facts, the court dispenses with a lengthy recitation of the medical history from the relevant period. To the extent specific records or information are relevant to or at issue in this case, they are addressed within the Analysis section below.

## ANALYSIS

### I.     Summary of the parties' arguments and the court's conclusions

Jeffrey presents two assignments or errors and some subsidiary arguments.[7] (Pl.'s Br., ECF No. 16, at 8-27.) For his first assignment of error, Jeffrey argues the ALJ failed to properly apply the supportability and consistency factors in 20 C.F.R. § 404.1520c in his persuasiveness findings regarding the medical opinions from Richard Surrusco, MD, Bert Spetzler, MD, and Ashley Earley, family nurse practitioner-certified (FNP-C). (*Id.* at 13-22.) Moreover, Jeffrey faults the ALJ for failing to sufficiently explain how he applied the supportability and consistency factors on Dr. Surrusco and Dr. Spetzler's medical opinions, so—according to Jeffrey—the court is left to guess how the ALJ reached his conclusions. (*Id.* at 14-16.) Jeffrey avers the ALJ's RFC limitations failed to include the

---

[7] At the ALJ hearing, the ALJ noted Jeffrey had a history of alcoholism, and Jeffrey testified he was sober for two years and four months. R. 54. The disability determination explanation at the initial level and the disability determination explanation at the reconsideration level found Jeffrey's substance abuse was documented, but his substance abuse was not material. R. 86, 96. SSR 13-2p explains the two-step process for drug addiction and alcoholism (DAA) materiality determinations: "Under the Act and our regulations, we make a DAA materiality determination only when: i. We have medical evidence from an acceptable medical source establishing that a claimant has a Substance Use Disorder, and ii. We find that the claimant is disabled considering all impairments, including the DAA." SSR 13-2p, 2013 WL 621536, *4 (Feb. 20, 2013). Here, none of the parties raised SSR 13-2p as an issue, so the court declines to *sua sponte* raise this issue.

limitations stated in Dr. Surrusco and Dr. Spetzler's medical opinions. (*Id.* at 17-18.) Also, Jeffrey contends the ALJ erred by not providing sufficient explanation and analysis for his persuasiveness finding on FNP-C Earley's medical opinion.  (*Id.* at 19-22.)  Jeffrey maintains the ALJ erred by rejecting FNP-C Earley's medical opinion merely on the basis of his own lay opinion. (*Id.* at 20.) Additionally, Jeffrey argues the ALJ erroneously failed to incorporate the RFC limitations recommended in FNP-C Earley's medical opinion. (*Id.* at 22.)

For his second assignment of error, Jeffrey maintains the ALJ's RFC failed to accommodate the limitations for his mental impairments that were recommended in the medical opinions, and the ALJ impermissibly relied on his own lay opinion to create his RFC. (*Id.* at 23-27.) According to Jeffrey, the ALJ's RFC is not supported by substantial evidence. (*Id.* at 23.) Again, Jeffrey contends the ALJ erroneously "played doctor." (*Id.* at 24.) Jeffrey maintains the ALJ failed to develop an adequate record. (*Id.* at 26.) Jeffrey argues the ALJ's RFC limitations for his mental limitations were not supported by substantial evidence. (*Id.* at 26.) Finally, Jeffrey avers the ALJ failed to build a logical bridge between the evidence and his RFC. (*Id.* at 27.)

In response, the Commissioner argues substantial evidence supports the ALJ's evaluation of the medical opinions and the ALJ's RFC findings. (Def.'s Br., ECF No. 18, at 7-11.) According to the Commissioner, the ALJ adequately applied the supportability and consistency factors and provided a sufficient explanation for his RFC findings. (*Id.* at 8-10.) Moreover, the Commissioner contends the ALJ did not rely on his own lay opinion to support his RFC, but instead the ALJ appropriately exercised his authority to develop the RFC based on substantial evidence. (*Id.* at 10-11.) Finally, the Commissioner maintains

the ALJ considered all the evidence and set forth an RFC that accommodated Jeffrey's impairments and limitations. (*Id.* at 11.)

As a preview of the discussion below, I make the following findings: (1) The ALJ failed to conduct a relevant function analysis of Jeffrey's ability to sit, stand, and walk; and (2) the ALJ erred by not building a logical bridge between evidence of Jeffrey's severe mental impairments of depressive disorder and anxiety disorder and the RFC.

> **II.  The ALJ failed to conduct an adequate function analysis—pursuant to *Mascio* and *Monroe*—of Jeffrey's ability to sit, stand, and walk**
>
> > a.  <u>Pursuant to *Mascio* and *Monroe*, ALJs are required to perform a function analysis of relevant functions</u>

The Fourth Circuit held "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" *Mascio*, 780 F.3d at 636 (quoting *Cichocki v. Astrue,* 729 F.3d 172, 177 (2d Cir.2013)) (ellipsis original); *see also Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016) (quoting *Mascio*, 780 F.3d at 636) ("we have held that 'remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review'").

In a function analysis "the ALJ must explain the conclusions reached and explain any record evidence which contradicts the RFC determination." *Connie B. v. Kijakazi*, No. 7:22-CV-00260, 2023 WL 3959922, at *7 (W.D. Va. June 12, 2023) (citing SSR 96-8p, 1996 WL 374184 (July 2, 1996)). To develop an adequate RFC, the ALJ must "'first identify the individual's functional limitations or restrictions and assess his or her work-

related abilities on a function-by-function basis.'" *Hultz v. Bisignano*, No. 23-2259, 2025 WL 3623144, at *5 (4th Cir. Dec. 15, 2025) (quoting SSR 96-8p, 1996 WL 374184, at *1). "An ALJ cannot 'express RFC in exertional levels of work'—such as 'light' work or 'medium' work—until he or she performs an adequate function-by-function analysis." *Richard S. v. O'Malley*, No. 5:22-CV-00060, 2024 WL 467584, at *15 (W.D. Va. Feb. 7, 2024) (quoting *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021)).

The relevant DIB regulation provides that ALJs must formulate an RFC based on a relevant function analysis of the claimant's ability, *inter alia*, to sit, stand, and walk.

> When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as *sitting, standing, walking*, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 C.F.R. § 404.1545 (emphasis added); *see also* 20 C.F.R. § 416.945(b). Also, SSR 96-8p requires that an ALJ's RFC assessment address exertional and non-exertional capacities of the claimant. SSR 96-8p, 1996 WL 374184, *5. Moreover, SSR 96-8p provides the following: "Exertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven strength demands: *Sitting, standing, walking*, lifting, carrying, pushing, and pulling. Each function must be considered separately." *Id.* (emphasis added).

After *Mascio* and *Monroe*, district courts in the Fourth Circuit have remanded when ALJs failed to conduct relevant function analyses (including the ability to sit, stand, and walk). *See Williams v. Berryhill*, No. 1:16-CV-00064-MR, 2017 WL 927256, at *3

(W.D.N.C. Mar. 8, 2017) (remanding because the ALJ failed to perform the relevant function analysis of the claimant's ability to sit, stand, and walk); *see also Inman v. Berryhill*, No. 7:17-CV-182-FL, 2018 WL 7324920, at *4 (E.D.N.C. Nov. 29, 2018), *report and recommendation adopted*, No. 7:17-CV-182-FL, 2019 WL 637767 (E.D.N.C. Feb. 14, 2019) (recommending remand because the ALJ failed to perform the relevant function analysis of the claimant's ability to walk and stand).

      b.      <u>Because the ALJ failed to perform an adequate function analysis of Jeffrey's ability to sit, stand, and walk, remand is warranted</u>

Here, the functions of sitting, standing, and walking are relevant because of Jeffrey's severe impairments of obesity, diabetes mellitus with neuropathy, and lumbar spine spondylosis. R. 26. As discussed below, the ALJ commented on Jeffrey's difficulties with sitting, standing, and walking four times in his RFC assessment. R. 34, 36, 37, 38.

First, the ALJ noted the following about Jeffrey's subjective allegations about his functional limitations: "With regard to functional limitations, the claimant reported difficulty lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, climbing stairs, seeing, remembering things, completing tasks, concentrating, understanding, following instructions, and using his hands." R. 34.

Second, the ALJ noted Jeffrey testified that he had "difficulty using his lower extremities, a need to elevate his legs, difficulty standing more than 15 minutes, difficulty walking for more than 25 yards." *Id.*

Third, the ALJ summarized FNP-C Earley's medical opinion in the following way:

> [C]laimant could walk/stand on ground level for two minutes or less without resting; likely needed to stand/reposition at least every 20 minutes . . . Ms. Earley's examination noted the claimant had problems with balance, needed assistance getting on the exam table, decreased lower extremity pulse, mildly decreased strength in his lower extremities, decreased

> lower limb pulses, decreased range of motion, and lower extremity discoloration which support her conclusions.

R. 37.

Fourth, the ALJ summarized Dr. Surrusco and Dr. Spetzler's medical opinions relating to Jeffrey as follows:

> could stand/walk for a total of two hours; could sit for a total of six hours; could occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds; could occasionally stoop; should never balance, kneel, crouch, or crawl; should avoid even moderate hazards; and should avoid concentrated extreme temperatures and vibration.

R. 38.

As noted above, the Fourth Circuit held that "'remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform *relevant functions*, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" *Monroe*, 826 F.3d at 188 (quoting *Mascio*, 780 F.3d at 636) (emphasis added). According to the DIB regulations, light work "requires a good deal of walking or standing." 20 C.F.R. § 404.1567(b); *see also* 20 C.F.R. § 416.967(b). Importantly, "light work requires standing of walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time." *Jennifer S. v. Bisignano*, No. 5:24-CV-00071, 2025 WL 2388607, at *4 n.4 (W.D. Va. Aug. 15, 2025) (quoting SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1986)).

Here, the ALJ's RFC concluded Jeffrey was capable of "light exertional work." R. 33. Thus, the ALJ's light work finding also determined that Jeffrey was capable of "'standing of walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time.'" *Jennifer S.*, 2025 WL 2388607, at *4 n.4 (quoting SSR 83-10, 1983 WL 31251, at *6). As noted above,

10

Jeffrey testified that he had "difficulty using his lower extremities, a need to elevate his legs, difficulty standing more than 15 minutes, difficulty walking for more than 25 yards." R. 34. Given the contradiction between some of the evidence and the ALJ's finding that Jeffrey was capable of light work, the ALJ needs to explain how Jeffrey could stand or walk for six hours out of an eight hour workday.

I find the functions of sitting, standing, and walking are relevant in Jeffrey's case because (1) his severe impairments of obesity, diabetes mellitus with neuropathy, and lumbar spine spondylosis may affect his ability to sit, walk, or stand, R. 26; and (2) the ALJ noted several pieces of evidence regarding Jeffrey's difficulties with sitting, standing, and walking, so these are relevant functions. R. 34, 36, 37, 38; *see also Jennifer W. v. Kijakazi*, No. 1:22-CV-01177, 2023 WL 2245635, at *5 (D. Md. Feb. 27, 2023) (citing *Henderson v. Kijakazi*, No. CV AAQ-20-3346, 2022 WL 1555408, at *3 (D. Md. May 17, 2022)) (remanding because the ALJ failed to perform a relevant function analysis of the claimant's ability to sit, walk, and stand).

I find the ALJ failed to adequately explain how he reconciled contradictory evidence about Jeffrey's ability to sit, walk, and stand. *See Green v. Berryhill*, No. 1:15-CV-00273-RJC, 2017 WL 1206014, at *7 (W.D.N.C. Mar. 30, 2017) (remanding because the ALJ failed to perform a function analysis of the claimant's ability to sit, walk, and stand, despite "contradictory evidence in the record regarding Plaintiff's ability to walk, sit, and stand and for what length of time"). Also, the ALJ erred by making an RFC exertional work finding without first making an adequate function analysis about Jeffrey's ability to sit, walk, and stand, and relevant function analyses must be completed before an RFC determination. *Richard S.*, 2024 WL 467584, at *15 (quoting *Dowling*, 986 F.3d

at 387) (noting the ALJ must first perform the relevant function analyses before making an RFC finding about the exertional level the claimant is capable of).

In conclusion, I recommend remand because the ALJ failed to perform an adequate function analysis regarding Jeffrey's ability to sit, walk, and stand. *See Melissa B. v. Comm'r, Soc. Sec. Admin.*, No. CV SAG-23-1917, 2024 WL 2304877, at *3 (D. Md. May 21, 2024) (citing *Dowling*, 986 F.3d at 388–89) ("remand is appropriate when an ALJ fails to assess 'relevant' functions").

### III. The ALJ erred by not building a logical bridge—as required by *Arakas*—between evidence of Jeffrey's severe mental impairments of depressive disorder and anxiety disorder and the ALJ's RFC

#### a.    Pursuant to *Arakas*, ALJs must provide a logical bridge in their RFC analyses

As noted above, the Fourth Circuit noted ALJ's written decisions must provide a logical explanation: "To pass muster, ALJs must 'build an accurate and logical bridge' from the evidence to their conclusions." *Arakas*, 983 F.3d at 95 (quoting *Monroe*, 826 F.3d at 189). When an ALJ fails to provide a logical explanation between the evidence and the ALJ's conclusions, the court cannot find substantial evidence supports the ALJ's decision. *Cook v. Berryhill*, No. 2:16-CV-85, 2017 WL 8895457, at *17 (N.D.W. Va. Dec. 27, 2017), *report and recommendation adopted*, No. 2:16-CV-85, 2018 WL 1010485 (N.D.W. Va. Feb. 22, 2018) (citing *Monroe*, 826 F.3d at 190). Also, when an ALJ fails to provide an adequate explanation, "the reviewing court cannot properly evaluate whether the ALJ applied the correct legal standard." *Besaw v. Kijakazi*, No. 1:23-CV-00001-MR, 2023 WL 8461178, at *4 (W.D.N.C. Dec. 6, 2023) (quoting *Mills v. Berryhill*, No. 1:16-CV-00025-MR, 2017 WL 957542, at *4 (W.D.N.C. Mar. 10, 2017)).

12

ALJs have a duty to provide a logical bridge between the evidence and the ALJ's RFC assessment. *Timothy F. v. Kijakazi*, No. 7:22-CV-174, 2023 WL 5733882, at *8 (W.D. Va. Sept. 5, 2023). Also, ALJs fail to provide a logical bridge when they mischaracterize evidence. *Jacob G. o/b/o G.G. v. Berryhill*, No. 7:18-CV-15, 2019 WL 1571286, at *7 (W.D. Va. Feb. 26, 2019), *report and recommendation adopted*, No. 7:18-CV-00015, 2019 WL 1290895 (W.D. Va. Mar. 20, 2019) (citing *Brown v. Berryhill*, No. 7:16-cv-00404, 2018 WL 1439602, at *3 (W.D. Va. Mar. 22, 2018)).

After *Arakas*, district courts in the Fourth Circuit have remanded cases because the ALJ failed to build a logical bridge between the evidence and the ALJ's RFC findings. *See Robin R. v. Comm'r of Soc. Sec.*, No. 4:24-CV-00026, 2025 WL 2702046, at *11 (W.D. Va. Sept. 23, 2025) (remanding because the ALJ failed to build a logical bridge between the evidence about the claimant's depression and anxiety and the ALJ's RFC findings); *Dolly H. v. Kijakazi*, No. 2:22-CV-00573, 2023 WL 6174413, at *1 (S.D.W. Va. Sept. 22, 2023) (remanding because the ALJ failed to build a logical bridge between the evidence about the claimant's mental impairments and the ALJ's RFC findings); *Woodington v. Kijakazi*, No. 2:20-CV-51-BO, 2022 WL 619808, at *2 (E.D.N.C. Mar. 2, 2022) (remanding because the ALJ failed to build a logical bridge between the evidence cited and the ALJ's RFC).

       b.     <u>The ALJ did not provide a logical bridge between evidence about Jeffrey's severe impairments of depressive disorder and anxiety disorder and RFC findings about Jeffrey's depressive disorder and anxiety disorder, so the case should be remanded</u>

Here, the ALJ found Jeffrey had severe impairments including depressive disorder and anxiety disorder. R. 26. In the RFC assessment the ALJ summarized evidence about Jeffrey's depressive disorder and anxiety disorder. R. 34, 36, 37, 38. First, the ALJ noted

13

Jeffrey alleged his depressive disorder and anxiety disorder had worsened. R. 34. Second, the ALJ noted Jeffrey testified he had depression. *Id.* Third, the ALJ observed the following about Jeffrey's mental health impairments:

> [T]he record is significant for ongoing treatment related to mental health issues, the most significant of which are depressive disorder and anxiety disorder. The claimant regularly reported or was observed to display behavior and temperament consistent with these diagnoses, including panic attacks, suicidal ideation, difficulty thinking or concentrating, emotional withdrawal or isolation, insomnia, and fatigue.

R. 36.

Fourth, at medical appointments in 2021 and 2023, Jeffrey denied anxiety and depression. R. 37.

After summarizing the evidence in the RFC assessment, the ALJ made the following conclusory statement: "Limiting the claimant to a restricted range of light exertional work sufficiently accounts for the limitations caused by his adrenal insufficiency, obesity, diabetes mellitus with neuropathy, hyperthyroidism, depressive disorder, anxiety disorder, liver disease, and lumbar spine spondylosis." R. 37.

On the next page, the ALJ offered the following conclusion:

> [T]he claimant requires ongoing therapy and psychotropic medications to manage his symptoms of anxiety disorder and depressive order. Therefore, while mental examinations are generally normal, the record as a whole is more consistent with finding they are severe impairments that limit him to simple, detailed, and complex tasks in a setting without strict time deadlines and some social limitations.

R. 38.

I find the ALJ's statements on pages 37 and 38 are conclusions, R. 37-38, not logical bridges. *See Spivey v. O'Malley*, No. 2:22-CV-16-FL, 2024 WL 333857, at *4

14

(E.D.N.C. Jan. 2, 2024), *report and recommendation adopted*, No. 2:22-CV-16-FL, 2024 WL 331878 (E.D.N.C. Jan. 29, 2024) (quoting *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019)) (noting ALJs are "not permitted to merely review the evidence and state a conclusion without providing the requisite 'logical explanation'"). Because the ALJ failed to adequately explain how he considered Jeffrey's depressive disorder and anxiety disorder, I cannot evaluate whether substantial evidence supports the ALJ's decision. *See Cook*, 2017 WL 8895457, at *17 (citing *Monroe*, 826 F.3d at 190). Also, given that the ALJ failed to build a logical bridge, I cannot determine whether the ALJ applied the correct legal standards. *See Besaw*, 2023 WL 8461178, at *4 (quoting *Mills*, 2017 WL 957542, at *4).

Thus, I find the ALJ failed to build a logical bridge between the evidence about Jeffrey's depressive disorder and anxiety disorder and his conclusions, so I recommend that this case should be remanded.

In summary, I recommend remand for two reasons. First, the ALJ failed to conduct an adequate function analysis of Jeffrey's ability to sit, stand, and walk. Second, the ALJ erred by not building a logical bridge between evidence of Jeffrey's severe mental impairments of depressive disorder and anxiety disorder and the ALJ's RFC.[8]

## CONCLUSION

For the above reasons, I respectfully recommend to the presiding District Judge that the decision of the Commissioner be **REVERSED** and **REMANDED** pursuant to the fourth sentence of 42 U.S.C. § 405(g).

---

[8] Plaintiff made several arguments on appeal. (Pl.'s Br., at 8-27.) Because the court has determined that the ALJ erred in the ways discussed above, the court declines to further address Plaintiff's remaining arguments. However, upon remand, the ALJ should examine all of Plaintiff's arguments and re-evaluate the evidence as a whole. *See Hancock v. Barnhart*, 206 F.Supp.2d 757, 763 n.3 (W.D. Va. 2002) (noting the ALJ's prior decision has no preclusive effect, as it is vacated, and the new hearing is conducted de novo).

**Notice to Parties**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection, including the waiver of the right to appeal. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the presiding District Judge.

Entered: March 30, 2026

C. Kailani Memmer
United States Magistrate Judge

16